## DENNETT *vs.* CROCKER & *als.*

The payment of taxes on land, as an act of ownership, may be proved by parol, without production of the assessments, or of the collector's tax-books.

Where land was claimed by actual possession and inclosure in fences, and was bounded on one side by a pond, and on the other sides by other lands, to which the claimant had good title; though his fences did in fact surround the land in question on all sides except that next the pond, yet it was properly left to the jury to determine whether they were erected for the purpose of inclosing the land in controversy, or merely for the protection of his own.

Land thus situated being about to be sold, the claimant declared to the intended purchaser that he held it by possession, warning him not to buy a quarrel; but it was held that these declarations, unaccompanied by any act of ownership, did not constitute a disseisin, nor change the character of the previous inclosure by fences.

THIS was an action of trespass, *quare clausum fregit,* for cutting and carrying away certain trees from the lot numbered seven in the eleventh range of lots in *Bridgton,* between *January* 1, 1829, and *April* 1, 1831, which was the date of the writ; and it was tried before *Parris J.* upon the general issue.

The plaintiff relied upon a title acquired by twenty years possession; and submitted sundry depositions and the testimony of several witnesses to the jury, in support of it; and for this purpose he offered also to prove by *Stephen Swett,* that more than ten years since, *Swett,* then holding a deed of the lot aforesaid, and being upon that part of it which lies east of *Crotched* pond, for the purpose of examining and exploring the lines of it, was informed that the residue of the lot, lying west of the pond, and which was the *locus in quo,* was held by possession; and supposing, from the information to this effect, which he received, that he could not hold it by his deed, he for this reason, neglected to go upon and examine it. But the Judge refused to admit so much of this evidence as was only hearsay, confining the witness to speak only of his own acts and knowledge.

The defendants justified under a deed from the heirs of the late *Thomas Robison* to them jointly. They also exhibited a deed from *Benjamin Kimball, Enoch Perley* and *James Stevens,* to *Thomas Robison,* under whom the defendants' grantors claimed as heirs at law, which deed, though objected to for want of authority in them to execute it, the Judge permitted to be read in evidence, to show the extent of *Robison's* claim.

To rebutt the title set up by the plaintiff, the defendants read sundry depositions and examined several witnesses, tending to prove that the plaintiff had, on various occasions, up to within five or six years of the date of the writ, in conversation, called the *locus in quo* by the name of the *Robison* land ; and that he and his grantors have always admitted and respected the *Robison* title to the *locus in quo.*

To prove the continued possession of their grantors, the defendants introduced *John Perley* as a witness, and offered to prove by him, that, as agent for their grantors, he had the care of the lot, and had occasionally been upon it to see that no trespass was committed ; and that he had given permission to take dead wood from the lot ; and that the plaintiff had once, some years ago, but within twenty years, applied to him or his father, as agent for the *Robisons,* for leave to cut wood on the lot on the west side of the pond. In the course of the examination, the witness disclosed that he had a written power of attorney, which he could not produce, having left it at home. The plaintiff objected to his admission until the written power was produced. The Judge however permitted the defendants to examine him as to any acts done by him, as agent for defendants' grantors, which had been subsequently recognized and ratified by them. He also permitted him to testify to the payment of taxes upon the lot, for the defendants' grantors, though the plaintiff objected that the assessments to the defendants' grantors, and the collector's bills, should have been produced. And he testified that as agent for the heirs of *Thomas Robison* senior, without any written power, since the decease of his son *Thomas,* he had paid all taxes assessed on the lot numbered seven in the eleventh range, up to the time of the sale to the defendants ; and had taken care of

said lot for them ; which services and payments he had charged from time to time in accounts, which have been paid and settled by *Lemuel Weeks*, as agent for the heirs, his wife being one. He also testified that between five and six years since, the plaintiff came to him and said there was a pine tree standing on the western side of the pond, near the line between his land and *Robison's*, which he rather thought was on his, and believed he should cut it. The witness told him he had no tree there ; that it was on *Robison's* land, and if he cut it, the witness would overhaul him for it ; to which the plaintiff made no reply. He said that he never heard of the plaintiff's claiming any title to the *locus in quo* until within one year preceding, and about the time of the sale to the defendants. He further testified that in the fall of 1823, he, as agent for the *Robisons*, ran the line between the plaintiff's farm and the *locus in quo*, in company with the plaintiff, who made no objection, except that he thought the corner was two or three rods farther east. As agent of the *Robison* heirs he notified the plaintiff to attend. No entry by the heirs of *Thomas Robison* after his decease, was proved by the defendants except the aforesaid acts of *Perley*.

The plaintiff proved that on the day of, and prior to the sale of the lot, he told *Davis*, one of the defendants, that he held it by possession, and that if he purchased it he would buy a quarrel. He also proved that the *locus in quo*, which was triangular in form, was bounded on two sides by land owned by him ; which land had for ten or twelve years been inclosed by substantial fence built by himself, most of which was stone wall ; and on the remaining side by a pond, which, from its depth and width, constituted a natural fence ; that there was no fence between the plaintiff's field and the *locus in quo ;* that his cattle, which were pastured in the close adjoining and on the *locus in quo*, ranged over the latter without obstruction ; that a small portion of it, along the line adjoining the plaintiff's pasture, was cleared and produced grass, which was eaten by the plaintiff's cattle ; and that he occasionally cut and took wood from the tract in controversy.

Dennett v. Crocker.

The plaintiff contended that even if he had not made out title by possession for twenty years, yet that at the time of the sale, the defendant's grantors were disseised, and so nothing passed to them by their deed; and that his declaration to *Davis*, supported by the possession he had, was *per se* conclusive evidence of a disseisin.

But the judge left it to the jury to determine whether the fence erected by the plaintiff was built for the purpose of inclosing the *locus in quo*, or other lands owned by him; and whether the plaintiff, for and during twenty years next before the time when the trespass is alleged to have been committed, or at the time of the execution of the deed from the heirs of *Thomas Robison* to the defendants, had, open, notorious and exclusive possession of that part of lot number seven in the eleventh range, where the trespass is alleged to have been committed, claiming to hold it adversely, and manifesting his claim by such acts of ownership indicative of the exercise of right, in hostility to the former possessor, as comport with the ordinary management of similar estates in the possession and occupancy of those who have title thereto; stating that in ordinary cases, the inclosure by fence, especially such as that erected by the plaintiff, would be evidence of claim and possession, if erected immediately around the tract claimed, or in such position as to manifest an intention of occupancy; however it might fall short of such evidence, if erected in such position as to inclose other tracts, and apparently be for the only purpose of inclosing those tracts, although the tract claimed might be within those surrounded by the fence. And upon this part of the case, he instructed them, that if they found the *locus in quo* had been in the continual and exclusive possession and occupation of the plaintiff, or those under whom he claims, for twenty years next before the time when the trespass is alleged to have been committed, or was so in his possession at the time of the conveyance from the heirs of *Thomas Robison* to the defendants, then their verdict should be for the plaintiff; otherwise for the defendants.

The plaintiff requested the Judge to instruct the jury that his declaration to *Davis* at the time of the sale was, *per se*, conclusive evi-

dence of a disseisin, when taken in connexion with the other facts proved in the case; which instruction he declined to give; but he did instruct them that they would consider the plaintiff's declaration to *Davis* with all the other testimony bearing upon the question; and that if, in their opinion, upon the evidence, the heirs of *Robison* were disseised at the time of the execution of their deed to the defendants, nothing passed by it, and the plaintiff was entitled to a verdict.

In the course of the trial when the deed to the defendants from the heirs of *Thomas Robison* was offered, the plaintiff objected to its admission because the letter of guardianship to *Henry Frothingham*, and the power authorising him to execute the deed as attorney to *Mary Robison*, guardian to her children *Thomas W.* and *Mary Robison*, were not produced. But it having been proved that the deed was duly executed by the other heirs of *Thomas Robison*, the Judge permitted it to be read to the jury.

The verdict, which was for the defendants, was taken subject to the opinion of the Court upon the general question whether they were entitled to retain it.

*Daveis* and *R. A. L. Codman*, for the plaintiff, cited *Prop'rs. of Kennebec purchase v. Call*, 1 *Mass.* 403; *Comomnwealth v. Kenniston*, 4 *Mass.* 646; *Waterman v. Robinson*, 5 *Mass.* 303; *Bassett v. Marshall*, 9 *Mass.* 312; *Andrews v. Hooper*, 13 *Mass.* 472; *Poignard v. Smith*, 6 *Pick.* 172; *Brinley v. Whiting*, 5 *Pick.* 348.

*Greenleaf, Fessenden & Deblois*, for the defendants, were stopped by the Court, whose opinion was delivered by

WESTON J. If *Stephen Swett*, the witness, had received information from a tenant in possession, that he held adverse to his claim, the declarations of such tenant would be evidence of the fact; but it does not appear from whom the information came; and the witness knew not whether it was true or false. It was mere hearsay, and properly rejected as such. The objection, made at the trial,

to the admission of the deed to *Robison*, to show the extent of his claim, is waived by the counsel for the plaintiff.

It is insisted that the agency of *John Perley*, a witness for the defendants, was not proved by competent testimony; he having a written power from *Thomas Robison*, under whom the defendants' grantors held as heirs. That power however ceased by the death of *Robison*, after which the witness acted under a parol authority from his heirs. All the facts to which he testified, happened after his decease, except payment of part of the taxes; and as to this part of his testimony, it was not allowed by the ruling of the Judge, and must have come out without any special objection, made to this part alone. But proof of the payment of any taxes, by those who claimed the *Robison* title, it is contended was inadmissible, without the production of the assessments and the collector's bills. If the due assessment of these taxes had been material to the issue, which cannot be pretended, the production of the regular evidence of this fact, might have been required. The payment itself was matter *in pais*, to which the witness was competent to testify; and there might have been no other evidence of the fact. The witness was not called to prove, nor did he testify, whether the taxes were rightfully claimed or not of those whom he represented.

The plaintiff, having failed to show any title whatever, cannot recover; whether the defendants' title, from all the heirs of *Thomas Robison*, is made out or not. If the land was his, and they have the interest of part of the heirs, they had a right to enter upon the premises, and exercise the acts of ownership, of which the plaintiff complains. The execution of the deed, under which the defendants claim, by part of the heirs, being proved or admitted, it was legally in evidence, and properly read to the jury.

The title of the plaintiff, and not that of the defendants, was the question in issue. Had they been plaintiffs, they would have been required to make out their title affirmatively, and then some of the objections to the operation and effect of the deed, under which they hold, might have been properly taken. But as they were involved also in the plaintiff's title, which depended on disseisin, these objections have been removed by the verdict of the jury. They have

Dennett *v.* Crocker.

found that the plaintiff had no seisin, by virtue of a possession and improvement. His fences were made to enclose his other land. This point the jury have settled. And while they existed, he repeatedly recognized the *Robison* title. The Judge was requested to instruct the jury, that what the plaintiff said to *Davis*, one of the defendants, about the time of the execution of the deed to them, was, in connexion with the other facts, conclusive evidence of a disseisin. But what their combined effect would be, would depend upon the character and quality of the other facts. Mere declarations do not make a disseisin ; but they may show the nature and character of an actual possession. The declarations of the plaintiff were left to the jury. And we are of opinion that in giving the instructions he did, and in witholding such as were requested, the Judge was warranted by law. All adverse seisin being disproved and negatived, there was no necessity of an entry, on the part of *Robison's* heirs, to give actual seisin ; and no impediment to the conveyance of their seisin, by their deed, to the defendants.

*Judgment on the verdict.*